IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:08cv1311 (AJT/JFA) |
| ) | |
| MICROSEMI CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This case is an antitrust enforcement action brought by the United States, through the Antitrust Division of the Department of Justice ("DOJ"), against defendant Microsemi Corporation ("Microsemi"). It is based on Microsemi's acquisition of substantially all of the assets of Semicoa, Inc. ("Semicoa"), an alleged competitor with respect to the manufacture and sale of certain highly specialized electronic components used in aerospace and military applications. In its two count Verified Complaint ("VC"), the Government alleges that Microsemi's acquisition of Semicoa's assets substantially lessened competition in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and that as a result of the acquisition, Microsemi created a monopoly and obtained monopoly power in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. VC, ¶¶ 4, 48, 51.

Presently pending before the Court is Microsemi's Motion to Dismiss for Improper Venue, Motion to Dismiss for Lack of Personal Jurisdiction, or, in the alternative, Motion to Transfer Venue (collectively "the Motions"). The Court heard oral argument on the Motions on February 20, 2009, following which it took the Motions

under advisement. For the reasons stated herein, the Court DENIES Microsemi's Motion to Dismiss for Improper Venue, DENIES its Motion to Dismiss for Lack of Personal Jurisdiction and GRANTS its Motion to Transfer Venue.

## I. Background

Microsemi is a Delaware Corporation with its principal place of business in Irvine, California. VC, ¶ 7. It manufactures certain "high reliability" semiconductors that are used in what are known as JANS and JANTXV[1] small signal transistors and "ultra fast recovery rectifier diodes," products which essentially function as switches and one-way valves in regulating the flow of an electric current. VC, ¶¶ 7, 12. These transistors and diodes are manufactured to exacting standards and are used by the military services and the national security agencies of the United States in a wide range of critical space, air, land and sea applications. VC, ¶¶ 1, 11, 12. Microsemi's manufacturing facilities for these products are located in California, Arizona and Massachusetts and these products are shipped to customers throughout the United States. VC, ¶ 7.

Semicoa was a California corporation with its principal place of business in Costa Mesa, California. VC, ¶ 8. It also engaged in the manufacture and sale of JANS and JANTXV small signal transistors and was in the process of becoming a manufacturer of JANTXV and JANS diodes. VC, ¶¶ 8, 35. Semicoa's manufacturing facilities for these products were located in Costa Mesa, California, and its products were shipped to customers throughout the United States. VC, ¶ 8.

---

[1] "JANS" is the acronym for "Joint Army-Navy Space" and is the designation for the highest reliability grade certified by the Department of Defense. "JANTXV" is the acronym for "Joint Army-Navy Technical Exchange-Visual Inspection" and is the second highest reliability grade certified by the Department of Defense. VC, ¶ 15.

On July 14, 2008, Microsemi and Semicoa completed an asset purchase and sale transaction by which Microsemi acquired from Semicoa the entire portion of its business engaged in the development, manufacture and sale of the JANS and JANTXV small signal transistors and diodes ("the Acquisition"). VC, ¶ 7. The acquired Semicoa assets are located in Costa Mesa, California, together with all the documentation relating to those assets. Microsemi's Mem. in Supp., ("Def. Br."), Ex. A at ¶¶ 6-7. On December 18, 2008, the Government filed this action in this Court. The Government alleges subject matter jurisdiction under Section 4 of the Sherman Act and Section 15 of the Clayton Act, 15 U.S.C. §§ 4 and 25. It alleges venue in this district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22 and 28 U.S.C. § 1391(c), with venue proper in this Division pursuant to Local Civil Rule 3(C). VC, ¶¶ 5, 6.

## II. Motion to Dismiss for Improper Venue and Motion to Dismiss for Lack of Personal Jurisdiction

Microsemi seeks the dismissal of this action on the grounds that venue is not proper in this Court and that this Court may not constitutionally exercise personal jurisdiction over it. The parties agree that the critical inquiry is whether venue is proper in this Court since the existence of the factual prerequisites for venue would satisfy those necessary for this Court to exercise personal jurisdiction. *See Reynolds Metals Co. v. Columbia Gas Sys., Inc.*, 669 F. Supp. 744, 747 (E.D. Va. 1987) ("[t]he same general due process principles provide the standard for making both venue and personal jurisdiction determinations."). Once a district court has established venue under the Clayton Act, the Court "may properly obtain personal jurisdiction over the defendant through extra-territorial service of process." *Id.*

In support of its position that venue is not proper in this district, Microsemi has submitted sworn declarations that evidence Microsemi's lack of ties to this district and Virginia. On the basis of these declarations, Microsemi contends that it is not an "inhabitant" of Virginia, that it is not "found" in Virginia and that it does not "transact business" in Virginia. Def. Br. at 6. Specifically, Microsemi is not incorporated or registered to do business in Virginia, has no offices or employees in Virginia, does not own or lease any property or facilities in Virginia, does not maintain any bank or financial accounts in Virginia, does not manufacture any products in Virginia, and otherwise has no physical presence in Virginia. Def. Br., Ex. A at ¶¶ 4, 8. In challenging venue, Microsemi relies heavily on the amount of its business revenue derived from sales transactions with Virginia customers, which accounts for only $1.8 million out of its total worldwide sales of $514 million. Def. Br. at 8. Microsemi further points out that $1.7 million of that $1.8 million[2] pertains to a single Virginia customer, Orbital Sciences, and that the contracts associated with those sales arose from unsolicited orders governed by California or New York law, and not Virginia law. Rebuttal Mem. in Supp. of Motions ("Def. Rebuttal Br.") at 3. Moreover, Microsemi asserts that it does not physically ship products directly into Virginia, but rather transfers products to a common carrier at a location outside of Virginia under a shipping arrangement where title to the product passes to Virginia customers outside of Virginia. Def. Br., Ex. A at 9-11.

---

[2] A second tier subsidiary of Microsemi also sold $475,000 of products to Virginia customers during fiscal year 2008. These sales, however, do not relate to the Government's antitrust claims. Microsemi contends that these sales should not be considered in evaluating whether it "transacts business" in this district. *See* Def. Br. at 10 (citing *Diamond Chem. Co. v. Atofina Chemicals, Inc.*, 268 F. Supp. 2d 1, 12 (D.D.C. 2003)). The Government does not appear to rely on these sales to justify venue in this district.

The Government contends that venue is proper in this district because (1) Microsemi has been selling and shipping its products into Virginia for the past nine years, with "substantive price negotiations by phone or e-mail accompanying these sales;"[3] (2) Microsemi has derived more than $6 million from sales to Virginia over the last four years; (3) Microsemi is one of the "principal suppliers" of Orbital Sciences, located in Virginia, and (4) two "key" Microsemi executives traveled to Virginia on one occasion in 2007 for contract negotiations. *See* Mem. in Opp. To Motions ("Gov. Br.") at 1-5, Ex. B at (3)–(7). On this basis, the Government contends that Microsemi has "continuous and substantial contacts" with customers located in this district sufficient to sustain venue and personal jurisdiction in this district. Gov. Br. at 4.

In response, Microsemi contends that its Virginia related sales in 2008 constituted only 0.35% of its worldwide sales and are therefore not "substantial" but "de minimis" and only a "tiny fraction" of its own worldwide sales, its Virginia customers' overall product costs and the Virginia economy. Def. Br. at 8-9. Microsemi claims that in evaluating whether business operations are "substantial" for venue purposes, "business operations are to be viewed from the perspective of the defendant, as opposed to the perspective of a particular customer of the defendant located in the forum state." Def. Rebuttal Br. at 8. They must also be evaluated, Microsemi contends, as of the time of the challenged transaction. Microsemi also contends that the shipment of goods into a state, without more, does not constitute "transacting business," invoking constitutional

---

[3] It appears that these sales take place pursuant to the classic "battle of the forms" and that its Virginia customers do not concede that Microsemi's standard form contract governs. *See* Gov. Br., Ex. B, ¶ 4.

limitations on the exercise of personal jurisdiction.[4] Def. Rebuttal Br. at 4-7. Characterizing the evidence in favor of venue in this district as "limited purchases by three customers and a single business trip," Microsemi claims that courts have uniformly refused to find that a company "transacts business" when faced with this limited level of interaction with a forum state.

Venue in this case is governed by Section 12 of the Clayton Act, 15 U.S.C. § 22, which provides in pertinent part:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

The history of this provision is instructive. Enacted in 1914, Section 12 of the Clayton Act added the phrase "or transacts business" to the language of the venue provision in Section 7 of the Sherman Antitrust Act, which had provided for venue only in those districts where the defendant "resides or is found." *See United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807, 808 (1948). Before Section 12 was enacted, the Supreme Court interpreted venue under Section 7 narrowly, refusing to find venue proper where a company, though not physically present in the state, had engaged in certain commercial activities directed to the district on the grounds that these activities did not constitute the sort of "doing business" that caused the company to be "found" there. *See People's Tobacco Co. v. Am. Tobacco Co.*, 246 U.S. 79 (1918) (no venue under Section 7 where the company had withdrawn from the district but continued to advertise in the district,

---

[4] Microsemi claims that in the last two years, its commercial relationship with Orbital Sciences "has declined significantly" and the alleged "long term" contract is no longer in effect. *See* Def. Rebuttal Br. at 9.

made interstate sales in the district through third parties and sent into the jurisdiction certain individuals who solicited business). In *Eastman Co. v. Southern Photo Co.*, 273 U.S. 359 (1927), the Supreme Court considered whether Section 12 in fact broadened venue or "merely made explicit what had been decided" under Section 7. *Id.* at 361.

In *Eastman*,[5] the Supreme Court found that Congress intended Section 12 to be an expansion of Section 7 and that by extending venue to those districts where the defendant "transacts business," Section 12 of the Clayton Act supplements "the remedial provision of the Anti-Trust Act for the redress of injuries resulting from illegal restraints upon interstate trade." *Id.* at 373. The *Eastman* Court also found that Section 12 had the effect of "relieving the injured person from the necessity of resorting for the redress of wrongs committed by a non-resident corporation, to a district, however distant, in which it resides or may be 'found.'" *Id.* at 373. It therefore found that Section 12 was broadened in order to afford victims of illegal antitrust activity a convenient forum, which it envisioned would often be where the customer was located. *Id.* at 373-74; *see also Scophony*, 333 U.S. at 808. In light of these remedial purposes, the Court in *Eastman* concluded that a corporation "is engaged in transacting business in a district . . . if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character." *Id.* at 373. It further found that a company was "none the less engaged in transacting business" within the meaning of Section 12 of the Clayton Act "because of the fact that such business may be entirely interstate in character and be transacted by agents who do not reside within the district." *Id.* at 373.

---

[5] In *Eastman*, the Supreme Court considered whether under the "transacts business" provision of Section 12 a New York corporation could be sued in Georgia when it had no offices or employees located there and its Georgia directed activities did not cause it to "reside" or be "found" there.

7

In *Scophony,* the Supreme Court observed that *Eastman* "gave the words 'transacting business' a much broader meaning for establishing venue than the concept of 'carrying on business' denoted by 'found' under the preexisting statute and decisions." *Id.* at 807. The Court in *Scophony* also found that "by substituting practical, business conceptions for the previous hair-splitting legal technicalities encrusted upon the 'found'-'present'-'carrying on business' sequence, the Court [in *Eastman*] yielded to and made effective Congress' remedial purpose." *Id.* at 808.

As directed by *Eastman* and *Scophony*,[6] this Court must determine whether venue exists under Section 12 by considering the "practical, non-technical, business standard supplied by 'or transacts business' in the venue provision." *Id.* at 810. That inquiry should reflect a broad, expansive reading of Section 12's "transacts business" provision and the totality of facts and circumstances pertaining to a defendant's interaction with the forum. *See, e.g., Reynolds Metals Co.,* 469 F. Supp. at 748.

The dollar value of sales revenue generated within the proposed venue is typically viewed as the most direct measure of the degree to which one engages in business "of a substantial character." *See Sunbury Wire Rope Mfg. Co. v. United States Steel Corp.,* 129 F. Supp. 425, 427 (E.D. Pa. 1954) ("The selling of its product is the most important part of a business. There can be a substitute for every department of a business but sales. Products or parts of them can be bought instead of manufactured, but there can be no substitute for sales."). Sales revenue, however, is not the only measure of a business activity's "character" for the purposes of evaluating venue in federal antitrust cases.

---

[6] The Fourth Circuit has not directly considered the meaning of "transacting business" in Section 12.

8

In order to achieve the remedial purposes recognized in *Eastman* and *Scophony*, this Court should also consider the nature and significance of the defendant's contact with the forum, as seen from the perspective of those who may have claims as a result of illegal antitrust activity. Viewed in that light, the role and impact of the involved products on the business fortunes of customers and competitors in the district is also a pertinent consideration. *See Athletes Foot of Delaware, Inc. v. Ralph Libonati Co.*, 445 F. Supp. 35 (D. Del. 1997) (court found that in evaluating whether sales volumes were "of a substantial character," "the substantiality of business operations is to be determined from the viewpoint of the average businessman rather than the corporate giant.").[7] This Court therefore rejects the proposition that the significance of those contacts is to be evaluated solely from the defendant's perspective or in terms of the amount of revenue generated from a particular forum as a percentage of overall sales. Likewise, for these purposes, the particular structure and mechanisms of the sales, such as shipping arrangements or ordering procedures, is irrelevant. *See B.J. Semel Assocs., Inc. v. United Fireworks Mfg. Co.*, 355 F.2d 827, 832 (D.C. Cir. 1965).[8] This Court also rejects as simply inapposite those cases relied on by Microsemi where a business' operations relative to a particular forum or state were evaluated for the purposes of determining whether general jurisdiction exists over a defendant or whether a defendant is "transacting business" for

---

[7] The court added: "The proper measure of substantiality of sales within a district is the absolute dollar amount of those sales." *Athletes Foot*, 445 F. Supp. at 47. Otherwise, "a large corporation could, with impunity, engage in the same act which would subject a smaller corporation to jurisdiction and venue." *Id.* at 43 (quoting *Green v. United States Chewing Gum Mfg. Co.*, 224 F. 2d 369, 372 (5th Cir. 1955)).

[8] The *Semel* court stated: "We are unable to believe that the spirit of *Scophony* comports with allowing the seller's shipping practices to determine his amenability to suit under Section 12. Were it otherwise, F.O.B. would always, and without more, compel the buyer to litigate on the seller's home grounds - the very result which Congress sought to avoid in Section 12." *B.J. Semel*, 355 F.2d at 832.

the purposes of state long arm jurisdiction, with sufficient "minimum contacts" for the constitutional exercise of state jurisdiction over a state cause of action under the Due Process Clause of the Fourteenth Amendment. *See e.g., Bay Tobacco, LLC v. Bell Quality Tobacco Prod.*, 261 F. Supp. 2d 483, 491 (E.D. Va. 2003) (evaluating jurisdiction under the Virginia long-arm statute); *cf. Board of Trustees v. McD Metals*, 964 F. Supp. 1040, 1044 (E.D. Va. 1997) ("It is the *Fifth Amendment*, not the *Fourteenth Amendment*, that controls due process analysis in non-diversity, or federal question, cases. Generally, the *due process* inquiry under the *Fifth Amendment* is broader than that under the parallel clause of the *Fourteenth Amendment*.") (emphasis in original).[9]

In this case, the record reflects that before the challenged transaction, Microsemi derived at least $6 million in revenue from sales of the relevant products to customers in Virginia. The vast majority of these sales came from a single customer, Orbital Sciences.

---

[9] Microsemi cites three cases decided under Section 12 where venue was rejected on the grounds that sales into a district were not "substantial." First, *Commonwealth Edison Co. v. Fed. Pac. Elec. Co.*, 208 F. Supp. 936, 939 (N.D. Ill. 1962) involves sales of approximately $3,000 by a company with no other ties to the district. Second, *Pocahontas Supreme Coal Co. v. Nat'l Mines Corp.*, 90 F.R.D. 67 (S.D.N.Y. 1981) involved a company with no ties to the Southern District of New York or to New York State, but which made "spot market" sales constituting 0.2 percent of defendant's production to New York customers, although it is unstated whether the sales were to customers in the district. Third, *Sea-Roy Corp. v. Parts R Parts, Inc.*, No. 1:94cv59, 1996 WL 557857 (M.D.N.C. 1996) involved the particular application of Section 12 to a German company that sold plaintiff $1.4 million of the products at issue over an eleven year period in Germany and the products were shipped to North Carolina at plaintiff's risk and expense, where the plaintiff resold them. The German company had no presence in the United States through offices, employees, property, agents, bank accounts or otherwise and was not licensed to do business in the United States. The plaintiff's business relationship with the German company ended several years before suit was filed, although the cause of action arose out of the terminated business relationship. In rejecting venue under Section 12, the court relied on those cases that dealt with considerations solely applicable to foreign corporations and which implicated Due Process considerations under the Fifth Amendment. The court also rejected venue under the North Carolina long arm statute as to asserted state law claims.

While the cost of these products may be a relatively small percentage of Orbital Sciences' overall manufacturing costs, these components play an important role in Orbital Sciences' ability to manufacture and deliver products using these components.

In *Sunbury Wire Rope Manufacturing Company*, the court concluded in 1954 that "[n]o ordinary businessman would be likely to say that the delivery of almost $600,000 worth of a company's product into the [selected district] within less than two years as part of sales transactions does not constitute the transacting of business in that district." *Sunbury Wire Rope Mfg. Co. v. U.S. Steel Corp.*, 129 F. Supp. 425, 427 (E.D. Pa. 1954). What was said in 1954 about $600,000 can be said about $6 million today. Viewing this case from the perspective of a customer in Orbital Sciences' position, the availability of a forum in this district under Section 12 becomes clearer, as the exercise of venue would accomplish the remedial purposes of Section 12 as articulated in *Eastman* and *Scophony*. That the plaintiff in this case is the United States does not make unavailable what would otherwise be an available venue under Section 12.

For these reasons, this Court finds that venue under Section 12 of the Clayton Act is proper in this district and Defendant's Motion to Dismiss for Improper Venue is DENIED. As all parties agree that this Court has personal jurisdiction if venue is proper, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is also DENIED.

### III. Motion to Transfer

Microsemi has also moved in the alternative to transfer this case to the Central District of California. Section 1404(a) provides in pertinent part:

> (a) for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The decision to transfer a case under Section 1404(a) is within the sound discretion of the court. *See Beam Laser Sys., Inc. v Cox Communications, Inc.*, 117 F. Supp. 2d 515, 517 (E.D. Va. 2000).

In deciding whether to transfer this action under Section 1404(a), this Court must first determine whether this action could have been originally brought in the Central District of California. *See, e.g., Lycos, Inc. v. Tivo, Inc.*, 499 F. Supp. 2d 685, 691 (E.D. Va. 2007). There is no question that this action may have been brought in the Central District of California. Defendant is clearly an "inhabitant" of and "found" in that district and clearly "transacts business" in that district. The Government does not contend otherwise. Rather, the Government opposes transfer based principally on (1) the convenience of the parties and witnesses and (2) the interest of justice.

### a. The convenience of the parties

Not specifically stated in Section 1404(a), but recognized in its application, is that a court should give deference to a plaintiff's choice of forum. Recognizing that transfer under Section 1404(a) overrides a plaintiff's choice of forum under Section 12, courts have imposed a heavy burden on those who seek transfer and a court will not order transfer unless the balance is strongly in favor of the defendant. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1950); *Morehead v. Barksdale,* 263 F.2d 117, 119 (4th Cir. 1959). The impermissible result to be avoided is simply to shift the balance of inconvenience from the plaintiff to the defendant. *See Coors Brewing Co. v. Oak Beverage Co.*, 549 F. Supp. 2d 764, 772 (E.D. Va. 2008). The parties are in agreement that the plaintiff's choice of forum is entitled to deference; they differ fundamentally, however, over how much deference is due in this case.

The Government contends that its choice of forum is entitled to substantial, if not, dispositive weight. Gov. Br. at 7-8. Microsemi contends that the Government's choice of this district is entitled to little weight given that the challenged transaction was negotiated and consummated in California, the cause of action arose in California, both Microsemi's and Semicoa's headquarters are located in California, the relevant documents are in California, and the largest concentration of likely witnesses are in California or significantly closer to California than Virginia. Def. Rebuttal Br. at 16.

Where venue is proper, a plaintiff's choice of forum is entitled to substantial weight, particularly where the plaintiff's choice of forum is authorized by the more liberal antitrust venue provision. *See, e.g., United States v. Brown Univ.*, 772 F. Supp. 242 (E.D. Pa. 1991). On the other hand, in addition to the plaintiff's choice of forum, courts should balance such factors as the defendant's residence, the residence of potential witnesses, the situs of events giving rise to the lawsuit, the location of records and documents, and other practical considerations that may expedite the trial and make the trial less expensive than it would be otherwise. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981); *Van Dusen v. Barrack*, 376 U.S. 612 (1964); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509 (1947). For these reasons, courts have typically extended far less deference than what would otherwise attend a plaintiff's choice of forum, even in antitrust cases, where the plaintiff's connections to the forum that justify that deference are lacking.

In this case, DOJ is not located in Virginia, but has its headquarters in Washington, DC, and the cause of action arose in California. Where the plaintiff is not located in the chosen district and the cause of action did not arise in that district, the

plaintiff's choice of forum is not entitled to substantial weight. *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 635 (E.D. Va. 2003) ("[I]f there is little connection between the claims and [the chosen forum], that would militate against a plaintiff's chosen forum and weigh in favor of transfer to avenue with more substantial contacts.").

To buttress its argument, the Government points to its counsel's location in Washington, DC and asserts that Virginia is therefore much more convenient than the Central District of California. Plaintiff also contends that certain Government agencies, whose employees are potential witnesses, are located in Virginia and therefore, Virginia should be deemed the Government's "home" state. Neither of these contentions supplies the otherwise missing connections between the Government and this district. DOJ is not located in Virginia and the presence of an interested Government agency within this district does not transform this district into the Government's "home" for the purposes of venue. In fact, even when an involved government agency is located in the selected district, deference has not been extended to that government agency's choice of that district when the controversy itself had no meaningful ties to that forum. *See F.T.C. v. Cephalon*, 551 F. Supp. 2d 21, 26 (D.D.C. 2008).[10] While the Government's lawyers (as well as Microsemi's) may find court appearances convenient in this district, the Government has not made any suggestion that the case cannot be effectively managed in California. *See Brown Univ.*, 772 F. Supp. at 243 ("The government insists that

---

[10] In *Cephalon*, the Federal Trade Commission, located in the District of Columbia, advanced a similar argument with respect to the FTC's choice of venue in the District of Columbia in an antitrust action. After observing the general rule that a plaintiff's choice of forum is entitled to substantial deference only if the particular controversy has meaningful ties to the forum and the plaintiff is a resident of that forum, the court observed that "apart from the fact that many of the FTC's prosecuting attorneys are located in this area, there are no meaningful ties between the District of Columbia and the events (or parties) that give rise to this action." *Cephalon*, 551 F. Supp. at 26.

Philadelphia is more convenient than Boston because in Philadelphia there is an Antitrust Division field office where there is guaranteed office space and equipment and a link-up with government computer and word processing systems.").[11] Based on all these considerations, this Court gives little weight to the Government's choice of this district.

### b. Witnesses

In considering witness convenience for the purpose of Section 1404(a), courts have typically drawn a distinction between party witnesses and non-party witnesses, with greater weight to be afforded to the convenience of non-party witnesses. *Lycos*, 499 F. Supp. 2d at 693. The Government contends that the location of witnesses, both party and non-party, are sufficiently connected to this district such that transfer would simply and impermissibly shift the balance of any inconvenience from the defendant to the plaintiff.

In evaluating "witness convenience" as a basis for transfer *vel non*, it is necessary to focus on the central issues in the case in order to determine which witnesses really matter. For that reason, courts have required those who seek or oppose transfer based on witness convenience to detail, in terms of location and testimony, those specific witnesses that are likely to testify. *Id.* The overarching issues in this case are (1) what is the relevant market for the relevant products and (2) what is the impact on that market by the challenged transaction. Both parties have profiled, in varying degrees of detail, the potential witnesses in this case.

Microsemi has identified an array of potential witnesses located in California and elsewhere outside of Virginia, together with a description of the issues on which they have relevant knowledge. In the category of "party witnesses," Microsemi points to five

---

[11] The Antitrust Division maintains one of its seven field offices in California.

15

"key" Microsemi employees[12] who have knowledge concerning the rationale for the challenged transaction, the efficiencies that are expected from the transaction, competition for the relevant products, pricing, product substitutability and manufacturing processes for the relevant products. Def. Br., Ex. A at 12; Def. Rebuttal Br., Ex. A at 8.

In the category of "non-party" witnesses, Microsemi first points to the former owner and other former employees of Semicoa, all of whom reside in California, who were involved in negotiating the challenged transaction or have knowledge of Semicoa's financial health at the time of the challenged transaction, competition for the relevant products and the developmental status of its diode products. Def. Br., Ex. A at 16; Def. Rebuttal Br., Ex. A at 12.

With respect to customers, Microsemi identifies by name fifteen (15) individuals located in California who are employed by eight different corporate customers and who are likely to testify on product substitutability. Def. Rebuttal Br., Ex. A at 10 and 14. Microsemi identifies an additional four witnesses employed by customers located in Colorado and claims that only three, small volume customers are located in Virginia. *Id.* at 14.

With respect to distributors, Microsemi points out that none of its distributors for the relevant products are located in Virginia and identifies three specific individuals employed by distributors who are located in California and who are likely to testify on the issues of product substitutability, product pricing, and price discrimination. Def. Rebuttal Br., Ex. A at 9.

---

[12] The five "key" employees are President and Chief Executive Officer, Chief Financial Officer, Chief Operating Officer and President, and two of its Senior Vice Presidents for Operations.

With respect to competitors, Microsemi claims that many of its primary competitors for the products described in the Verified Complaint are located in California, identifying specifically five individuals from three companies located in California, who may be called to testify concerning market entry, including their capability to reposition their facilities and begin producing the relevant products in a short time frame. Def. Rebuttal Br., Ex. A at 11. Microsemi also points out that the Government has already filed sworn declarations in the case from two individuals who reside in California. Def. Rebuttal Br. at 16-17.

In response, the Government first contends that Microsemi's California employees are party witnesses, whose inconvenience is essentially entitled to no weight, although it does point to Microsemi's Lawrence, Massachusetts plant as providing some countervailing East Coast balance. Gov. Br. at 9. With respect to other potential witnesses, the Government does not challenge that the individuals identified by Microsemi have relevant testimony on the issues listed, or their locations. Rather, the Government points to a different geographical constellation of witnesses that include (1) certain potential Government witnesses; (2) Microsemi customers; (3) Microsemi distributors; and (4) alleged competitors and/or other market entrants. The Government asserts that while there are potential non-party witnesses for whom the trial in California would be more convenient, their list of potential witnesses makes it "abundantly clear that there are at least as many potential non-party witnesses for whom testifying would be more convenient in Virginia." Gov. Br. at 10.

In the category of "government witnesses," the Government identifies by name one United States Navy employee in Virginia, one NASA employee in Greenbelt,

Maryland and two Defense Supply Center employees in Ohio. Gov. Br. at 10-11. As to the nature of their testimony, the Government references previously filed declarations from three of these individuals, all of which discuss various aspects of the Government's JANS and JANTXV certification and qualification programs. The Government also lists unidentified "representatives" of three other Government agencies in Virginia, but does not describe the issues on which they might testify or what their testimony would add to the specifically disclosed individuals. It also relies within this context on the convenience of this district to its lawyers from the Department of Justice and the Department of Defense and also the staff employed by those government agencies. Gov. Br. at 10-11.

With respect to customers, the Government lists fourteen[13] companies that are located outside of California, five of which are in Virginia. However, there are no specific individuals listed or the nature of their anticipated testimony.

With respect to Microsemi's distributors, the Government identifies three companies, without specific individuals, that are located in either New York or Florida, specific employees from two of which Microsemi has listed as located in California.

Finally, with respect to "alleged competitors and/or market entrants," the Government identifies ten companies outside of California, none of which are located in Virginia, four of which are located in New York, one of which is located in Massachusetts, one in Florida, one in Pennsylvania, one in the United Kingdom, and one in Switzerland. Gov. Br. at 12.

---

[13] It identifies five companies in Virginia, two in New Jersey, two in Massachusetts, two in New York and one each in Connecticut, Illinois, Pennsylvania and Maryland.

The Courts finds that the "convenience of witnesses" weighs heavily in favor of transfer. The only connection of witnesses to this district are those from the four or five Microsemi customers located in Virginia, none of whom are major Microsemi customers, and the Government employees that are located in the Washington metropolitan area. The latter, however, are treated more appropriately as party witnesses than non-party witnesses for the purposes of Section 1404(a). As the Government has stated, "party witnesses would properly include those under the power and control of a party, who can therefore "persuade its employees to appear at trial anywhere." Gov. Br. at 9-10; *see Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004) ("Party witnesses are the parties themselves and those closely aligned with the party."). On the other hand, the largest cluster of non-party witnesses is in California, with other concentrations scattered throughout the United States, but with no real proximity to Virginia. Given the substantial number of non-party witnesses located outside of this district, and the substantial travel that will be necessary even were this case to remain here, this district provides no real advantage to the Government with respect to securing the attendance of non-party witnesses through subpoena. *See* 15 U.S.C. § 23.

### c. The Interest of Justice

Finally, the Court must consider "the interest of justice." On this point, the Government claims that this case should stay in this district because of the public policy placed on a "speedy" disposition of civil cases and the expeditious enforcement of the antitrust laws, particularly since this district would allow this case to proceed the most expeditiously, whereas in the proposed transferee district the average time for case disposition is more than twice as long than in this Court. Gov. Br. at 12-13. Microsemi

claims the public interest is served by having this antitrust claim tried in the district in which the claim arose and that there is an important public interest in having this action resolved locally in California where both Microsemi and Semicoa operate and where the challenged transaction took place.

While the speed of this Court's docket does provide some support for maintaining the case in this district, the relative docket conditions that attracted the Government to this district are a minor consideration that cannot overcome other factors that weigh in favor of transfer. *See Lycos*, 499 F. Supp. 2d at 696. This Court finds that this controversy is centrally rooted in California and the interest of justice weighs in favor of having this matter transferred to the Central District of California for resolution.

For the above reasons, this Court finds that under the factors set forth in Section 1404(a), this case should be transferred to the Central District of California and Defendant's Motion to Transfer the case to the Central District of California is GRANTED.

An appropriate Order will issue.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
March 4, 2009