JS - 6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | CASE NO.: 8:09-cv-00275-AG-AN |
| v. ) | **FINAL JUDGMENT** |
| MICROSEMI CORPORATION, ) | |
| Defendant. ) | Hon. Andrew J. Guilford |

<u>**FINAL JUDGMENT**</u>

WHEREAS, plaintiff, United States of America, filed its Complaint on December 18, 2008, and the United States and Microsemi Corporation ("Microsemi"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Microsemi agrees to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights and assets by Microsemi to assure that competition is substantially restored;

AND WHEREAS, Microsemi has represented to the United States that the divestiture required below can and will be made and that Microsemi will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I.   Jurisdiction

This Court has jurisdiction over the subject matter of and each of the parties to this action.  The Complaint states a claim upon which relief may be granted against Microsemi under Section 7 of the Clayton Act, 15 U.S.C. § 18, as amended, and Section 2 of the Sherman Act, 15 U.S.C. § 2.

## II.   Definitions

As used in this Final Judgment:

A.   "Microsemi" means defendant Microsemi Corporation, a Delaware corporation with its headquarters in Irvine, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B.   "Semicoa" means Semicoa, a California corporation with its headquarters in Costa Mesa, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.   "Acquirer" means the entity to whom defendant divests the Divestiture Assets.

D.   "Divestiture Assets" means all assets acquired by Microsemi from Semicoa on July 14, 2008, including but not limited to:

> (1)   all specifications, manufacturing plans, assembly
> instructions, standard operating procedures, and

work instructions related to the manufacturing
process, including all right, title and interest
in or to all other assets of every kind and nature
used or intended to be used in the operation of
Semicoa's business, including, but not limited to,
any finished or unfinished devices, any materials,
data or know-how wherever found or of whatever
kind reasonably required to manufacture and sell
the goods and services previously produced by
Semicoa, as well as all books and records, and all
files, documents, papers and agreements that are
material to the continuing operation of Semicoa's
business;

(2)   all finished goods, works in progress, piece parts
and materials inventory, packaging, and labels,
supplies and other related personal property,
except that which has been sold since the closing
of the July 14, 2008 transaction between Microsemi
and Semicoa;

(3)   all equipment, machinery or software used in the
development, design, manufacturing and testing of
goods previously manufactured by Semicoa;

(4)   all right, title and interest in, and all
information related to, any tooling, molds,
equipment and proprietary specifications Semicoa
previously had with any and all vendors from which
Semicoa purchased goods or services, whether or
not there are any "open" purchase orders issued to
such vendors, as well as names and other
information concerning any vendor that provides

3

goods or services that were material to the
operation of Semicoa's business;

    (5)  any list of customers to which Semicoa previously
sold products or provided services over the three
years prior to July 14, 2008, whether or not there
are any "open" sales orders from such customers;

    (6)  all sales, marketing and promotional literature,
cost and pricing data, promotion list, marketing
data and other compilations of names and
requirements, customer lists and other sales-
related materials;

    (7)  all intellectual property ("IP") assets or rights
that have been used in the development,
production, servicing, and sale of QML Small
Signal Transistors and QML Ultrafast Recovery
Rectifier Diodes, including but not limited to:
all licenses, rights, and sublicenses, trademarks,
trade names, service marks, service names,
technical information, computer software and
related documentation, know-how, trade secrets,
approvals, certifications, advertising literature,
and all manuals and technical information provided
to the employees, customers, suppliers, agents, or
licensees of Semicoa and used in connection with
the development, design, manufacture, testing,
markets, sale, or distribution of QML Small Signal
Transistors or QML Ultrafast Recovery Rectifier
Diodes;

    (8)  all rights under all contracts, licenses,
sublicenses, agreements, leases, building leases,

4

commitments, purchase orders, bids and offers; and

(9) all rights acquired pursuant to municipal, state
and federal franchises, permits, licenses,
agreements, waivers and authorizations.

E.    "QML Ultrafast Recovery Rectifier Diode" means each JAN, JANS, JANTX, and JANTXV part listed on slash sheets 477 and 590 in the Qualified Products Database maintained by the Defense Supply Center Columbus.

F.    "QML Small Signal Transistor" means each JAN, JANS, JANTX, and JANTXV part listed on slash sheets 182, 251, 253, 255, 270, 290, 291, 301, 317, 336, 349, 354, 366, 374, 376, 382, 391, 392, 394, 395, 423, 455, 512, 534, 535, 544, 545, 558, 559, 560, and 561 in the Qualified Products Database maintained by the Defense Supply Center Columbus.

## III.  Applicability

This Final Judgment applies to Microsemi, as defined above, and all other persons in active concert or participation with it who receive actual notice of this Final Judgment by personal service or otherwise.

## IV.  Divestiture

A.    Microsemi is hereby ordered and directed, within thirty (30) calendar days after the filing of the proposed Final Judgment in this matter, or five (5) calendar days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets to an Acquirer in a manner consistent with this Final Judgment.  The United States, in its sole discretion, may agree to one extension of this time period, not to exceed thirty (30) calendar days, and shall notify

the Court of such extension.  Microsemi agrees to use its best efforts to divest the Divestiture Assets as expeditiously as possible.

B.   Microsemi shall provide the Acquirer and the United States information relating to the personnel involved in the development, production, operation, testing, management, or sales at the Divestiture Assets to enable the Acquirer to make offers of employment.  Microsemi will not interfere with any negotiations by the Acquirer to employ any Microsemi employee whose primary responsibility was the development, production, operation, testing, management, or sales at the Divestiture Assets.

C.   Microsemi shall permit the Acquirer to have reasonable access to personnel and to make inspections of the physical facilities included in the Divestiture Assets; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

D.   Microsemi shall warrant to the Acquirer that each asset will be operational on the date of sale.

E.   Microsemi shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

F.   Microsemi shall warrant to the Acquirer that there are no material defects in the environmental, zoning, permitting, qualification, or other permits pertaining to the operation of the Divestiture Assets, and that following the sale of the Divestiture Assets, Microsemi will not undertake directly or indirectly, any challenges to the environmental, zoning, or other

permits relating to the operation of the Divestiture Assets.

G.   Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV of this Final Judgment shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets will remain viable and the divestiture of such assets will remedy the competitive harm alleged in the Complaint.  The divestitures, whether pursuant to Section IV or Section V of this Final Judgment,

(1)   shall be made to an Acquirer that, in the United States's sole judgment, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the business of developing, producing, and selling QML Small Signal Transistors and QML Ultrafast Recovery Rectifier Diodes; and

(2)   shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer and Microsemi give Microsemi the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively in the business of developing, producing and selling QML Small Signal Transistors or QML Ultrafast Recovery Rectifier Diodes.

**V.   <u>Appointment of Trustee to Effect Divestiture</u>**

7

A.    If Microsemi has not divested the Divestiture Assets within the time period specified in Section IV(A), Microsemi shall notify the United States of that fact in writing.  Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.    After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Divestiture Assets.  The trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V(D) of this Final Judgment, the trustee may hire at the cost and expense of Microsemi any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

C.    Microsemi shall not object to a sale by the trustee on any ground other than the trustee's malfeasance.  Any such objections by Microsemi must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

D.    The trustee shall serve at the cost and expense of Microsemi, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the Divestiture Assets and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals

8

and agents retained by the trustee, all remaining money shall be
paid to Microsemi and the trust shall then be terminated.  The
compensation of the trustee and any professionals and agents
retained by the trustee shall be reasonable in light of the value
of the Divestiture Assets and based on a fee arrangement
providing the trustee with an incentive based on the price and
terms of the divestiture and the speed with which it is
accomplished, but timeliness is paramount.

E.   Microsemi shall use its best efforts to assist the
trustee in accomplishing the required divestiture.  The trustee
and any consultants, accountants, attorneys, and other persons
retained by the trustee shall have full and complete access to
the personnel, books, records, and facilities of the business to
be divested, and Microsemi shall develop financial and other
information relevant to such business as the trustee may
reasonably request, subject to reasonable protection for trade
secret or other confidential research, development, or commercial
information.  Microsemi shall take no action to interfere with or
to impede the trustee's accomplishment of the divestiture.

F.   After its appointment, the trustee shall file monthly
reports with the United States and the Court setting forth the
trustee's efforts to accomplish the divestiture ordered under
this Final Judgment.  To the extent such reports contain
information that the trustee deems confidential, such reports
shall not be filed in the public docket of the Court.  Such
reports shall include the name, address, and telephone number of
each person who, during the preceding month, made an offer to
acquire, expressed an interest in acquiring, entered into
negotiations to acquire, or was contacted or made an inquiry
about acquiring, any interest in the Divestiture Assets, and

shall describe in detail each contact with any such person. The
trustee shall maintain full records of all efforts made to divest
the Divestiture Assets.

G.   If the trustee has not accomplished the divestiture
ordered under this Final Judgment within six (6) months after its
appointment, the trustee shall promptly file with the Court a
report setting forth:  (1) the trustee's efforts to accomplish
the required divestiture; (2) the reasons, in the trustee's
judgment, why the required divestiture has not been accomplished;
and (3) the trustee's recommendations.  To the extent such
reports contain information that the trustee deems confidential,
such reports shall not be filed in the public docket of the
Court.  The trustee shall at the same time furnish such report to
the United States, which shall have the right to make additional
recommendations consistent with the purpose of the trust.  The
Court thereafter shall enter such orders as it shall deem
appropriate to carry out the purpose of the Final Judgment, which
may, if necessary, include extending the trust and the term of
the trustee's appointment by a period requested by the United
States.

## VI.   Notice of Proposed Divestiture

A.   Within two (2) business days following execution of a
definitive divestiture agreement, Microsemi or the trustee,
whichever is then responsible for effecting the divestiture
required herein, shall notify the United States of any proposed
divestiture required by Section IV or V of this Final Judgment.
If the trustee is responsible, it shall similarly notify
Microsemi.  The notice shall set forth the details of the
proposed divestiture and list the name, address, and telephone

10

number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.   Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from Microsemi, the proposed Acquirer, any other third party, or the trustee, if applicable, additional information concerning the proposed divestiture and the proposed Acquirer.  Microsemi and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.   Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Microsemi, the proposed Acquirer, any third party, and the trustee, whichever is later, the United States shall provide written notice to Microsemi and the trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Microsemi's limited right to object to the sale under Section V(C) of this Final Judgment.  Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated.  Upon objection by Microsemi under Section V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII.  **Financing**

11

Microsemi shall not finance all or any part of any purchase
or divestiture made pursuant to Section IV or V of this Final
Judgment.


### VIII.   Preserving and Maintaining Divestiture Assets

Until the divestiture required by this Final Judgment has
been accomplished, Microsemi shall take all steps necessary to
comply with the Order Approving Stipulation Modifying Order to
Preserve and Maintain Assets and Stipulation Modifying Order to
Preserve and Maintain Assets.  Microsemi shall take no action
that would jeopardize the divestiture ordered by this Court.


### IX.   Affidavits

A.   Within twenty (20) calendar days of the filing of the
proposed Final Judgment in this matter, and every thirty (30)
calendar days thereafter until the divestiture has been completed
under Section IV or V, Microsemi shall deliver to the United
States an affidavit as to the fact and manner of its compliance
with Section IV or V of this Final Judgment.  Each such affidavit
shall include the name, address, and telephone number of each
person who, during the preceding thirty (30) calendar days, made
an offer to acquire, expressed an interest in acquiring, entered
into negotiations to acquire, or was contacted or made an inquiry
about acquiring, any interest in the Divestiture Assets, and
shall describe in detail each contact with any such person during
that period.  Each such affidavit shall also include a
description of the efforts Microsemi has taken to solicit buyers
for the Divestiture Assets, and to provide required information
to prospective Acquirers, including the limitations, if any, on
such information.  Assuming the information set forth in the

affidavit is true and complete, any objection by the United

States to information provided by Microsemi, including limitation

1  on information, shall be made within fourteen (14) calendar days

2  of receipt of such affidavit.

3       B.    Within twenty (20) calendar days of the filing of the

4  proposed Final Judgment in this matter, Microsemi shall deliver

5  to the United States an affidavit that describes in reasonable

6  detail all actions Microsemi has taken and all steps Microsemi

7  has implemented on an ongoing basis to comply with Section VIII

8  of this Final Judgment.  Microsemi shall deliver to the United

9  States an affidavit describing any changes to the efforts and

10 actions outlined in Microsemi's earlier affidavits filed pursuant

11 to this section within fifteen (15) calendar days after the

12 change is implemented.

13      C.    Microsemi shall keep all records of all efforts made to

14 preserve and divest the Divestiture Assets until one year after

15 such divestiture has been completed.

16

17              **X.  <u>Compliance Inspection</u>**

18      A.    For the purposes of determining or securing compliance

19 with this Final Judgment, or of determining whether the Final

20 Judgment should be modified or vacated, and subject to any

21 legally recognized privilege, from time to time authorized

22 representatives of the United States Department of Justice

23 Antitrust Division, including consultants and other persons

24 retained by the United States, shall, upon written request of an

25 authorized representative of the Assistant Attorney General in

26 charge of the Antitrust Division, and on reasonable notice to

27 Microsemi, be permitted:

28

                              13

(1)   access during Microsemi's office hours to inspect

and copy, or at the option of the United States,

to require Microsemi to provide hard copy or

electronic copies of, all books, ledgers,

accounts, records, data, and documents in the

possession, custody, or control of Microsemi,

relating to any matters contained in this Final

Judgment; and

(2)   to interview, either informally or on the record,

Microsemi's officers, employees, or agents, who

may have their individual counsel present,

regarding such matters.  The interviews shall be

subject to the reasonable convenience of the

interviewee and without restraint or interference

by Microsemi.

B.   Upon the written request of an authorized

representative of the Assistant Attorney General in charge of the

Antitrust Division, Microsemi shall submit written reports or

response to written interrogatories, under oath if requested,

relating to any of the matters contained in this Final Judgment

as may be requested.

C.   No information or documents obtained by the means

provided in this section shall be divulged by the United States

to any person other than an authorized representative of the

executive branch of the United States, except in the course of

legal proceedings to which the United States is a party

(including grand jury proceedings), or for the purpose of

securing compliance with this Final Judgment, or as otherwise

required by law.

D.   If at the time information or documents are furnished

14

by Microsemi to the United States, Microsemi represents and

identifies in writing the material in any such information or

1   documents to which a claim of protection may be asserted under

2   Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and

3   Microsemi marks each pertinent page of such material, "Subject to

4   claim of protection under Rule 26(c)(1)(G) of the Federal Rules

5   of Civil Procedure," then the United States shall give Microsemi

6   ten (10) calendar days notice prior to divulging such material in

7   any legal proceeding (other than a grand jury proceeding).

8

9                        **XI.  <u>Notification</u>**

10       Unless such transaction is otherwise subject to the

11   reporting and waiting period requirements of the

12   Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended,

13   15 U.S.C. § 18a (the "HSR Act"), Microsemi, without providing

14   advance notification to the Antitrust Division, shall not

15   directly or indirectly acquire any assets of or any interest,

16   including any financial, security, loan, equity or management

17   interest, in any entity engaged in the development, production,

18   or sale of QML Small Signal Transistors or QML Ultrafast Recovery

19   Rectifier Diodes during the term of this Final Judgment.

20       Such notification shall be provided to the Antitrust

21   Division in the same format as, and per the instructions relating

22   to, the Notification and Report Form set forth in the Appendix to

23   Part 803 of Title 16 of the Code of Federal Regulations as

24   amended, except that the information requested in Items 5 through

25   9 of the instructions must be provided only about QML Small

26   Signal Transistors or QML Ultrafast Recovery Rectifier Diodes.

27   Notification shall be provided at least thirty (30) calendar days

28   prior to acquiring any such interest, and shall include, beyond

15

what may be required by the applicable instructions, the names of
the principal representatives of the parties to the agreement who
negotiated the agreement, and any management or strategic plans
discussing the proposed transaction.  Early termination of the
waiting periods in this paragraph may be requested and, where
appropriate, granted in the same manner as is applicable under
the requirements and provisions of the HSR Act and rules
promulgated thereunder.  This Section shall be broadly construed
and any ambiguity or uncertainty regarding the filing of notice
under this Section shall be resolved in favor of filing notice.


## XII.  <u>No Reacquisition</u>

Microsemi may not reacquire any part of the Divestiture
Assets during the term of this Final Judgment.


## XIII.   <u>Retention of Jurisdiction</u>

This Court retains jurisdiction to enable any party to this
Final Judgment to apply to this Court at any time for further
orders and directions as may be necessary or appropriate to carry
out or construe this Final Judgment, to modify any of its
provisions, to enforce compliance, and to punish violations of
its provisions.


## XIV.   <u>Expiration of Final Judgment</u>

Unless this Court grants an extension, this Final Judgment
shall expire ten (10) years from the date of its entry.


## XV.  <u>Public  Interest  Determination</u>

Entry of this Final Judgment is in the public interest.  The
parties have complied with the requirements of the Antitrust

Procedures and Penalties Act, 15 U.S.C. § 16, including making

copies available to the public of this Final Judgment, the

Competitive Impact Statement, and any comments thereon and the

United States's responses to comments.  Based upon the record

before the Court, which includes the Competitive Impact Statement

and any comments and response to comments filed with the Court,

entry of this Final Judgment is in the public interest.


Date: January 29, 2010


                    Court approval subject to procedures of the
                    Antitrust Procedures and Penalties Act, 15
                    U.S.C. § 16.

                    _____
                    Honorable Andrew J. Guilford
                    United States District Judge

17